UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

NEW YORK CITY EMPLOYEES' RETIREMENT
SYSTEM, TEACHERS' RETIREMENT SYSTEM OF
THE CITY OF NEW YORK, NEW YORK CITY POLICE         26-cv-1310
PENSION FUND, and NEW YORK CITY BOARD OF
EDUCATION RETIREMENT SYSTEM,                       **COMPLAINT**

                              Plaintiffs,

                  -against-

AT&T INC.,

                              Defendant.

------------------------------------------------------------------------ X

Plaintiffs, the New York City Employees' Retirement System ("NYCERS"), Teachers' Retirement System of the City of New York ("TRS"), the New York City Police Pension Fund ("PPF"), and the New York City Board of Education Retirement System ("BERS"), collectively referred to as the New York City Pension Funds (the "Funds"), by their attorney Steven Banks, Corporation Counsel of the City of New York, allege the following:

## PRELIMINARY STATEMENT

1.      The Funds bring this action for a judgment enjoining Defendant AT&T Inc. ("AT&T") from soliciting shareholder proxies for AT&T's 2026 annual shareholders meeting without including the Funds' timely submitted shareholder proposal.  The Funds are public pension funds, each of which individually holds AT&T common stock worth more than $25,000 and has continuously held those securities for at least one year.  The Funds' shareholder proposal was submitted to AT&T by letter dated December 1, 2025, and requests that AT&T's board of directors adopt a policy that the company publicly disclose its Consolidated EEO-1 Report, which is a comprehensive breakdown of the company's workforce by race, ethnicity,

and gender that AT&T is already required to submit annually to the U.S. Equal Employment Opportunity Commission.  This is not a new or unusual proposal: indeed, several of the Funds made a similar proposal in 2020 and AT&T agreed to voluntarily disclose its EEO-1 report, after which those Funds withdrew the proposal.  AT&T then went on to voluntarily disclose the report between 2021 and 2023.  In 2024, however, AT&T ended the practice without explanation, resulting in the Funds' December 2025 proposal.  Defendant AT&T's decision to exclude the Funds' shareholder proposal from its proxy solicitation violates Section 14(a) of the Securities Exchange Act of 1934 and its implementing regulations.

## **PARTIES**

2.      Plaintiff NYCERS is a public pension system organized and existing under the laws of the State and City of New York for the benefit of hundreds of thousands of present and former employees of the City of New York who are not eligible to participate in any of the other New York City public pension funds.  NYCERS has the capacity to sue and be sued. NYCERS is administered by an eleven-member Board of Trustees composed of representatives from the New York City Mayor's Office, Public Advocate of the City of New York, the Comptroller of the City of New York ("Comptroller"), the Office of the Manhattan Borough President, the Office of the Brooklyn Borough President, the Office of the Bronx Borough President, the Office of the Queens Borough President, and the Office of the Staten Island Borough President, as well as three employee members.  Pursuant to statute, the Comptroller is the custodian of NYCERS' assets and the chief investment advisor for NYCERS.

3.      Plaintiff TRS is a public pension system organized and existing under the laws of the State and City of New York for the benefit of hundreds of thousands of present and former public school teachers and others.  TRS has the capacity to sue and be sued.  TRS is

administered by a seven-member Board of Trustees composed of representatives from the New York City Mayor's Office, the New York City Department of Education, the Comptroller, and the Chancellor of the New York City Department of Education, as well as three employee members. Pursuant to statute, the Comptroller is the custodian of TRS' assets and the chief investment advisor for TRS.

4.    Plaintiff PPF is a public pension system organized and existing under the laws of the State and City of New York for the benefit of present and former full-time uniformed employees of the New York City Police Department. PPF has the capacity to sue and be sued. PPF is administered by a twelve-member Board of Trustees composed of representatives from the New York City Mayor's Office, the Comptroller, the New York City Police Commissioner, the New York City Department of Finance, the New York City Patrolmen's Benevolent Association, the New York City Sergeants' Benevolent Association, the New York City Detectives' Endowment Association, the New York City Captains' Endowment Association, and the New York City Lieutenants' Benevolent Association. Pursuant to statute, the Comptroller is the custodian of PPF's assets and the chief investment advisor for PPF.

5.    Plaintiff BERS is a public pension system organized and existing under the laws of the State and City of New York for the benefit of present and former non-pedagogical employees of the New York City Department of Education. BERS has the capacity to sue and be sued. BERS is administered by a 26-member Retirement Board composed of representatives from the New York City Mayor's Office, the New York City Department of Education, the Office of the Manhattan Borough President, the Office of the Brooklyn Borough President, the Office of the Bronx Borough President, the Office of the Queens Borough President, and the Office of the Staten Island Borough President, an independent member, and two employee members.

Pursuant to statute, the Comptroller is the custodian of BERS' assets and the chief investment advisor for BERS.

6.     Defendant AT&T is incorporated, organized, and exists under the laws of the State of Delaware with its registered agent, the Corporation Trust Company, located at 1209 Orange Street, Wilmington, Delaware 19801.  Defendant AT&T's primary office is located at 208 S. Akard Street, Dallas, Texas 75202.  AT&T sells securities that are registered with the Securities & Exchange Commission.

7.     AT&T is a global telecommunications company.  It is one of the world's largest telecommunications companies, with approximately $125 billion in annual revenue, and is the third-largest wireless carrier in the United States by number of subscribers.

## JURISDICTION AND VENUE

8.     This action arises under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ("Securities Act"), and Securities and Exchange Commission ("SEC") Rule 14a-8, 17 C.F.R. § 240.14a-8 ("Rule 14a-8").

9.     This Court has jurisdiction over the subject matter of the action under 28 U.S.C. § 1331.

10.     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 78aa because transactions constituting Defendant's violation of law have occurred and will occur in this district.

## BACKGROUND

11.     AT&T, like other large companies, solicits proxies in advance of its annual shareholder meetings to ensure that a quorum of shareholder votes exists to take actions necessary to conduct the company's business and to permit shareholders who cannot attend in

person to vote their shares.  To obtain votes by proxy, the company sends out proxy materials before the annual shareholder meeting.  These materials include (1) a proxy statement asking shareholders to vote on items at the upcoming meeting and soliciting authority to vote the shareholder's shares at that meeting in accordance with the shareholder's instructions, and (2) a proxy card on which shareholders provide those voting instructions.  Under Section 14(a) of the Securities Act, proxy solicitations must comport with the SEC's rules and regulations, as codified at 17 C.F.R. § 240.14a-1 *et seq.*

12.    These rules set forth eligibility and procedural requirements if shareholders wish to submit to the company a shareholder proposal to be printed in the company's proxy materials and voted on by shareholders at the upcoming meeting.  For example, a shareholder wishing to submit such a proposal "must have continuously held . . . [a]t least $25,000 in market value of the company's securities entitled to vote on the proposal for at least one year"; must submit a statement that the shareholder "intend[s] to continue to hold the requisite amount of securities . . . through the date of the shareholders' meeting"; and must submit a written statement of availability to meet with the company after submission of the shareholder proposal.  17 C.F.R. § 240.14a-8(b)(1).

13.    To establish eligibility to submit a shareholder proposal, the shareholder may "submit to the company a written statement from the 'record' holder of [the] securities (usually a broker or bank) verifying that, at the time [the shareholder] submitted [the] proposal, [the shareholder] continuously held at least . . . $25,000 in market value of the company's securities entitled to vote on the proposal for at least . . . one year."  17 C.F.R. § 240.14a-8(b)(2)(ii)(A).  The shareholder "must also include . . . [a] written statement that [it] intend[s] to continue to hold the requisite amount of securities . . . through the date of the shareholders'

meeting for which the proposal is submitted."  *Id.*

14.     A shareholder proposal is limited to 500 words, 17 C.F.R. § 240.14a-8(d), and must be "received at the company's principal executive offices not less than 120 calendar days before the date of the company's proxy statement released to shareholders in connection with the previous year's annual meeting," *id.* § 240.14a-8(e)(2).  Shareholder proposals typically contain a "resolved" clause asking the board of directors to take certain action and a "supporting statement."

15.     A company must include a shareholder proposal in its proxy solicitation materials if the proposal meets the eligibility and procedural requirements, unless the company can meet its burden of showing that the proposal falls within one or more of the 13 exclusions listed in 17 C.F.R. § 240.14a-8(i).

## THE FUNDS' SHAREHOLDER PROPOSAL

16.     As of December 1, 2025, the Funds collectively owned approximately 8,139,676 shares of AT&T common stock, which had, as of that date, an approximate market value of $209 million, and are entitled to vote on shareholder proposals at AT&T's 2026 annual meeting of shareholders.

17.     Each of the Funds, as of December 1, 2025, held AT&T common stock in excess of $25,000 in market value for at least one year and will continue to do so through the date of AT&T's 2026 annual meeting for shareholders.

18.     The Funds each authorized the Comptroller to present a shareholder proposal on behalf of the Funds to have AT&T adopt a policy to publicly disclose its Consolidated EEO-1 Report, a report detailing certain workforce statistics such as race, ethnicity, and gender, that AT&T is already required to prepare every year and submit to the U.S. Equal

Employment Opportunity Commission.  The proposed policy asks AT&T to annually disclose the report on its website and in its proxy statement but does not otherwise set specific timeframes for the company to act.

19.    The Comptroller notified AT&T by letter dated December 1, 2025, of the Funds' intent to present a shareholder proposal at AT&T's 2026 annual meeting of shareholders. The Comptroller requested that the company's proxy solicitation for that meeting include the Funds' proposal.

20.    The Funds' proposal to the AT&T shareholders specifically states as follows:

### EEO-1 Report Disclosure Policy

**RESOLVED:** Shareholders request that the Board of Directors adopt a policy requiring AT&T Inc. ("AT&T") to publicly disclose its Consolidated EEO-1 Report, a comprehensive breakdown of its workforce by race, ethnicity and gender (the "EEO-1 Report"), which AT&T is required to submit annually to the U.S[.] Equal Employment Opportunity Commission (EEOC). The policy should require that AT&T annually disclose its EEO-1 Report on its website and in its proxy statement.

**SUPPORTING STATEMENT**

AT&T 2024 Sustainability Update Report asserts: "Our commitment to strengthening our society also encompasses our workforce and supply chain. With employees across all 50 U.S. states and 51 countries, we strive to be an employer of choice. We are proud to bring together talented people with a wide range of backgrounds and experiences who serve our customers and communities every day."[1]

"We also believe that employees of color and women can contribute to improved company performance. A peer-reviewed 2024 study titled "Impact of Diversity and Inclusion on Firm Performance: Moderating Role of Institutional Ownership" analyzed 8,089 firm-year observations from globally-listed firms using ordinary least

_____

[1] https://sustainability.att.com/ViewFile?fileGuid=b4632aa0-6d0d-4740-85e5-9010a361bb9e

squares regression. The study found that companies with higher diversity and inclusion scores tend to perform better."[2]

The EEO-1 Report breaks down a company's U.S. workforce by race, ethnicity and gender according to 10 employment categories, including senior management, defined to incorporate individuals within two reporting levels of the CEO.

AT&T's 2024 Sustainability Update Report discloses its total workforce, but does not include any information on gender, race/ethnicity or job categories. EEO-1 Report disclosure, however, would provide investors with more consistent information to benchmark AT&T to its peers, in a decision-useful format, including:

- Standardized, quantitative, and reliable data in categories as defined by the EEOC, that is comparable across companies and industries, enabling investors to assess the representation of employees of color and women at various levels of AT&T;

- Specific data on senior management diversity; and

- Particularized data that allows investors to assess the representation of specific racial and ethnic groups by gender, such as Black female employees, in a job category – *and to make meaningful, year-over-year comparisons.*

Disclosure of its EEO-1 Report is a cost-effective means for AT&T to demonstrate diversity performance. AT&T already collects the data and submits it to the EEOC. The proposal neither prevents nor discourages AT&T from disclosing any other information that management believes reflect its organizational structure or demonstrates its commitment to diversity and inclusion.

EEO-1 Report disclosure will bring AT&T into line with virtually all S&P l00 companies, and nearly 400 of the S&P 500 companies, which disclose or have committed to disclose their EEO-1 Report, including its acknowledged peers, International Business Machines Corporation and Netflix Inc.

The New York City Pension Funds previously filed this proposal with AT&T and withdrew it based on a mutually agreed-upon disclosure back in 2021.

Please vote **FOR** this proposal.

---

[2] https://www.mdpi.com/1911-8074/17/8/344#:~:text=The%20mean%20no%20score%20of%20the,from%200%25%20to%20100%25

21. The Funds' submissions to AT&T fully established the Funds' eligibility and compliance with SEC Rule 14a-8.

22. By letter dated December 31, 2025, AT&T wrote to the SEC Division of Corporation Finance ("Division"), copying the Funds, advising the Division that AT&T intended to omit the proposal from its proxy materials. Rule 14a-8 requires such notice to the Division and the proponent if a company believes that a proposal may be excluded under one of the 13 exclusions in Rule 14a-8(i). In its correspondence with the SEC, AT&T cited the "ordinary business exclusion" of Rule 14a-8(i)(7) as the only basis for excluding the Funds' proposal.

23. Ordinarily, the Funds would have an opportunity to respond to AT&T's letter, and the Division would then evaluate both submissions and issue an informal, non-binding determination either concurring or declining to concur with the company's position on the excludability of the proposal, culminating in a "no-action" determination. Indeed, this is the process contemplated in the SEC's rules. *See* 17 C.F.R. § 240.14a-8(j)–(k).

24. This year, however, is different. In November 2025, the SEC issued a statement that it would not substantively respond to the vast majority of no-action requests for the 2026 proxy season.[3] Instead, as long as a company provides an "unqualified representation that [it] has a reasonable basis to exclude the proposal" under Rule 14a-8, then the Division would not object to the exclusion of the proposal.

25. AT&T invoked this policy in its correspondence with the SEC. Consistent with the SEC's new policy, on January 2, 2026—the very next business day after AT&T submitted its no-action request—the Division issued a letter stating that it would not

---

[3] SEC Division of Corporation Finance, Statement Regarding the Division of Corporation Finance's Role in the Exchange Act Rule 14a-8 Process for the Current Proxy Season, Nov. 17, 2025, available at https://www.sec.gov/newsroom/speeches-statements/statement-regarding-division-corporation-finances-role-exchange-act-rule-14a-8-process-current-proxy-season (archived at https://perma.cc/EW8J-G27Y).

object to the exclusion of the Funds' proposal based solely on AT&T's statement that it believed the proposal was excludable under Rule 14a-8.

26.     Under the SEC regulations, however, the Funds' proposal is not excludable under the ordinary business exception or any other exception.  It is the company's burden to prove that it has a valid basis to exclude a proposal from a shareholder who meets the eligibility criteria of the SEC rules.  Because AT&T has not done so, AT&T's decision to exclude the Funds' proposal is unlawful.

27.     AT&T can finalize proxy materials for its May 2026 annual shareholder meeting 80 days after its December 31, 2025 letter to the Division—i.e., as early as March 21, 2026.  17 C.F.R. § 240.14a-8(j)(1).

28.     AT&T's decision to omit the Funds' proposal from its 2026 proxy materials has caused injury to the Funds.  If the proposal is omitted from the proxy materials distributed in anticipation of AT&T's 2026 annual meeting, that injury will be irreparable.  The Funds intend to submit the proposal again next year, for inclusion in next year's proxy materials. Provided that the proposal obtains the support required by Rule 14a-8(i)(12), the Funds plan to repeat this process until the proposal is adopted.

## CAUSE OF ACTION
### (Violation of Securities Act and Related SEC Rule)

29.     The Funds restate the allegations of paragraphs 1 through 28.

30.     The SEC has promulgated rules governing the solicitation of proxies with respect to any security registered in accordance with Section 12 of the Securities Act, 15 U.S.C. § 78l.

31.     AT&T's equity securities are registered under Section 12 of the Securities Act, 15 U.S.C. § 78l.

32.    The SEC has promulgated Rule 14a-8, which outlines the procedures for the submission of a shareholder proposal for a company's proxy statement.

33.    The Funds, individually and collectively, have complied with the eligibility and procedural requirements for including their shareholder proposal in AT&T's proxy statement, as set forth in Rule 14a-8.  In particular, the Funds have individually and collectively owned for at least one year on the date they submitted the proposal, and intend to own through the 2026 annual meeting, securities whose market value exceeds $25,000.  The proposal, which included this information, was submitted to AT&T in a timely fashion and otherwise complies with all applicable requirements.

34.    AT&T must include the Funds' shareholder proposal in AT&T's proxy statement unless it can affirmatively establish that one of the exemptions listed in Rule 14a-8 applies.

35.    The "ordinary business" exemption set forth in Rule 14a-8(i)(7)—the only exemption cited in AT&T's letter to the SEC—does not apply to the Funds' proposal, as the proposal does not seek to micromanage the company, is not fundamental to the company's day-to-day operations, and in any event, implicates policy considerations that transcend AT&T's ordinary business.

36.    AT&T intends to exclude the Funds' proposal from the proxy materials for its annual shareholder meeting for 2026.

37.    AT&T's exclusion of the Funds' proposal from AT&T's proxy materials for Defendant's 2026 annual shareholder meeting violates SEC Rule 14a-8.

38.    Wrongful exclusion of the Funds' shareholder proposal from AT&T's proxy materials deprives the Funds of any meaningful opportunity to inform other shareholders

about the content of, and reasons for, the proposal.  Exclusion of the Funds' proposal from the proxy materials also deprives all shareholders of an opportunity to vote on the Funds' proposal.

39.     The Funds have no adequate remedy at law.


**WHEREFORE,** Plaintiffs demand preliminary relief and a final judgment:

(a)     declaring that Defendant's decision to omit Plaintiffs' proposal from its proxy solicitation materials violates § 14(a) of the Securities Exchange Act of 1934 and Rule 14a-8;

(b)     enjoining Defendant from soliciting shareholder proxies for Defendant's 2026 annual meeting for shareholders without informing shareholders of Plaintiffs' proposal and including the proposal in its proxy materials;

(c)     awarding the Funds their costs and disbursements of this action, including reasonable attorneys' fees, pursuant to the common-benefit doctrine; and

(d)     any other relief the Court deems just and proper.


Dated: February 17, 2026
       New York, New York

STEVEN BANKS
*Corporation Counsel of the City of New York*
Attorney for Plaintiffs

By:    _____
       Daniel R. Whitman
       Elizabeth M. Slater
       Senior Counsels
       100 Church Street
       New York, NY 10007
       (212) 356-2283/2033
       dwhitman@law.nyc.gov
       eslater@law.nyc.gov